## BLUNT v. AUDITOR GENERAL.

1. TAXATION—SCAVENGER SALES—EQUITY.

   Claim by plaintiffs, former owners, that they were entitled to be placed by a court of equity in *status quo ante* scavenger sale of 1941 as to property sold at 1944 scavenger sale and for which they had to pay $9,000 in order to match the bid, because property would have sold for less in 1941, where property had been withdrawn from sale because of error in description in sale for nonpayment of taxes, was untenable since plaintiffs could have paid the taxes before the State's title became absolute (1 Comp. Laws 1948, §§ 211.-355a, 211.356).

2. EQUITY—VOLUNTARY ASSUMPTION OF RISK.

   A court of equity will not relieve a party from the consequences of a risk which he voluntarily assumes.

3. TAXATION—SCAVENGER SALE—NATURE OF RIGHT OF FORMER OWNER TO MATCH BID.

   The right of a former owner to meet the highest bid at a so-called scavenger sale of the lands is not a condition upon which the State acquired title absolute to the lands through nonpayment of taxes, but is a privilege which could not accrue to such former owner or become a vested right in him until a sale has been made by the State to the highest bidder and until such sale it is a mere contingent right (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 159, Pub. Acts 1943).

4. Same—Scavenger Sale—Statutes.

The State land office board act does not require that any certain piece of property be sold at the next scavenger sale (Act No. 155, Pub. Acts 1937, as amended).

5. Same—Combination of Legal and Illegal Assessments—Sales —Redemption.

Owners of property which was validly assessed for taxes for one year, who permitted the State to acquire absolute title and then, in effect, sought redemption by having scavenger sale set aside because legally levied tax had been combined with incorrect assessments previously levied, sought redemption too late (1 Comp. Laws 1948, § 211.431).

6. Same—Notice—Hearing on Foreclosure of Lien for Taxes.

Since every owner of land is chargeable with notice that a tax will be levied on it each year, it is no hardship to require that such owner shall appear at the hearing in court on foreclosure of lien for nonpayment and raise any question affecting the manner of the assessment as well as the validity of the taxes and secure such decree as in law and equity protects his interests as owner.

7. Same—Scavenger Sale—Irregularities—Tax Sale.

Notwithstanding that an irregularity in proceedings by which State acquired title to land prevented its being offered at a so-called scavenger sale, since the former owners had their day in court at the tax sale through which the State acquired title, such irregularity does not now entitle the former owners to have tax liens cancelled on theory that the taxes in question were voidable.

8. Same—Scavenger Sale—Certificate of Auditor General.

Where no taxes were paid by former owners on land in question after adjacent lands had been acquired at scavenger sale and land here involved was sold at subsequent sale and plaintiffs matched the bid, the land became "otherwise disposed of" so as to exclude operation of statute authorizing auditor general to certify to the State land office board that such land might then be conveyed to the former owners upon payment of delinquent taxes, interest and penalties to date (1 Comp. Laws 1948, § 211.353).

Appeal from Oakland; Simpson (John), J., presiding. Submitted April 6, 1949. (Docket No. 21, Calendar No. 44,210.) Decided May 18, 1949. Rehearing denied June 29, 1949.

Bill by Waldo E. Blunt, individually and as executor of the last will and testament of Kate Blunt, deceased, and others against the Auditor General of the State of Michigan and others to allow payment of lesser sum than bid at scavenger sale in full satisfaction of amount due for delinquent taxes · and other relief. Decree for defendants. Plaintiffs appeal. Affirmed.

*George A. Cram,* for plaintiffs.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Chief Assistant Attorney General, for defendants.

BOYLES, J. In this case plaintiffs seek to set aside the sale of certain land at scavenger sale, and to compel a conveyance to them. The taxes for 1935 and prior years became delinquent on certain land in Oakland county which will be herein designated as the "north 40." The tax on this parcel was sold and bid in by the State at the 1942 tax sale and thereafter the title of the State became absolute. In due course of time said north 40 was conveyed by the auditor general to the State land office board, put into the "scavenger sale" by that board in 1944, at which time the plaintiff, Waldo E. Blunt, as owner, was compelled to match a bid of $9,000 for said north 40 to prevent title passing to a stranger in the line of title. Thereafter the plaintiffs filed the instant bill in chancery seeking alternative relief. They ask, (1) that they be permitted "to pay, redeem and discharge all taxes levied and assessed" against said north 40, namely, $1,325.40 plus interest, or (2) be permitted to pay $3,926.15 including certain reassessed taxes which they claim are invalid, or (3) be permitted to pay $6,023.60, the total amount of delinquent taxes. In any event, plaintiffs

ask that the scavenger sale be set aside, and that the State be required to deed the north 40 to them, representing the former owner, on payment of the above taxes. The trial court entered a decree dismissing the bill of complaint and plaintiffs appeal.

Martin Blunt and Kate Blunt, his wife, owned as tenants by the entireties an 80-acre farm in Oakland county, described as the east half of the northeast quarter of section 1, Royal Oak township. Kate Blunt survived her husband, died in 1937, and her estate appears in this case by the executor. The action was brought by Waldo E. Blunt, individually, and as executor of the estate of Kate Blunt, deceased, by his sister, Lomira E. Edgar, and his brother, Loren O. Blunt, all devisees under the will of Kate Blunt, deceased. For the years 1930–1935, inclusive, said property had been assessed on the tax rolls as the northeast quarter of the northeast quarter and the southeast quarter of the northeast quarter, referred to respectively as the "north 40" and the "south 40." Sometime during that period an error was made in respect to the property here in question so that the description read, "north 40 acres of northeast fractional quarter," and the "east half of northeast fractional quarter except north 40 acres." The first description would of course describe a 40-acre tract across the whole northeast quarter of section 1, only one-half of which the Blunts owned.

Both parcels became delinquent, and by reason of a tax sale and no redemption both parcels were put up for sale at the 1941 State land office board auction sale. Plaintiff Waldo Blunt at that sale did buy the south 40 at 25 per cent. of the assessed valuation by virtue of having matched the highest bid, he being an "owner" as defined in the State land office board

act.* The north 40 was not sold at that time (1941) because the auditor general withdrew it from the 1939 tax sale upon discovery of the defective description heretofore noted, and ordered it reassessed. The north 40 then went through the 1942 tax sale, the State title was allowed to become absolute, and in 1944 appeared in the scavenger sale for that year. At that sale plaintiff Blunt was required to match a bid of $9,000, and it is on that account that he now complains.

Plaintiffs' claim is that as to said north 40 they are entitled to be placed by a court of equity in "status quo ante" as of the scavenger sale of 1941. Plaintiffs' case may be summed up in the following testimony of Mr. Blunt:

"I knew in the normal course of events, in 1944 the property would come up, the north 40, at the regular scavenger sale. I was keeping track of it to come up and I went there to bid on it. The price ran up to $9,000 and I matched the bid.

"The reason I do not want to go through with the $9,000 bid is because the price is too high. It is not worth that for farming purposes and there has been over $3,000 already paid on this property since 1928. I should have acquired it for less money, except for the mistakes made in the county treasurer's office. By that I mean that if it had not been necessary for the auditor general to cancel the sale, the property would have come on for sale in 1941, and prices were not so high then. There was no opposition in the bidding and I would have bought it back at $1,200. * * * The reason I had the property withheld from the 1938 tax sale was for the idea that I might acquire it at the scavenger sale for less than the taxes. That was the idea. * * * I do not know whether I would have been able to buy at an earlier

---

* Act No. 155, §§ 5a, 6, Pub. Acts 1937, as amended (1 Comp. Laws 1948, §§ 211.355a, 211.356 [Stat. Ann. 1947 Cum. Supp. §§ 7.-955(1), 7.956]).

scavenger sale if the property had gone through the 1938 tax sale. * * * My whole complaint in this matter is that I have been deprived of the chance to get this north 40 acres back from the State for 25 per cent. of its assessed valuation. * * * Our failure to be able to do that, without any fault on our part as I feel, is what we are complaining about in this litigation."

There is no merit in that contention. It is mere speculation to assume what Mr. Blount would have been compelled to bid for the north 40 if it had been offered for sale at the 1941 scavenger sale. Furthermore, plaintiffs knew in 1942 that the north 40 had been bid in by the State, that they had not paid the taxes upon it, and knew that the State's title became absolute in 1942. Had plaintiffs paid the tax at the 1942 tax sale their trouble would have been ended. The trial judge properly designated their delay as a gamble which plaintiffs took and lost.

"A court of equity will not relieve a party from the consequences of a risk which he voluntarily assumes." *McCredie* v. *Buxton,* 31 Mich. 383.

Plaintiffs had no vested right to match a bid or to have the north 40 sold at the 1941 scavenger sale. In speaking of the privilege to match a bid at the scavenger sale, this Court said:

"The right of plaintiff to meet the highest bid is not a condition upon which the State acquired title absolute to the lands in question. This privilege could not under any circumstances accrue to plaintiff or become a vested right in it until a sale has been made by the State to the highest bidder. * * * Until such sale, it is not a present vested right or a present interest; it is a mere contingent right which may or may not happen." *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich. 85, 94.

In *Mt. Clemens Savings Bank* v. *State Land Office Board,* 309 Mich. 153, in a similar case the Court held:

"The owner has no interest in the land. He only has a privilege of matching the bid if and when a sale is made."

The right of an owner to match the bid at the land office board sale is conditional on the sale being held.* It accrues upon sale of the premises, but prior to sale the owner has only a privilege. Nothing in the State land office board act requires that any certain piece of property be sold at the next scavenger sale.

Plaintiffs contend that they are entitled to redeem the north 40 by payment of taxes as originally returned, without interest or penalties. This, in turn, is based upon the theory that the 1930–1935, and the 1936 and 1937 reassessment taxes were never validly assessed, and that the 1939 tax, though correctly levied, falls because of its combination with the prior incorrect assessments. Plaintiffs ignore the fact that the 1939 tax was not a reassessment tax, but a valid regularly-levied tax on a legal description. Plaintiffs' remedy obviously should have been to object to the auditor general's tax sale or redeem the property. They allowed the period of redemption to expire following the 1942 tax sale without paying the valid 1939 tax for which the property was sold at that sale. It is now too late to redeem by seeking, in effect, to set aside the scavenger sale.

"After the expiration of 6 months from and after the time when any deed made to the State * * * shall have been recorded in the office of the register of deeds for the county in which the land so deeded

---

* See Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 1b9, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 3723–7, Stat. Ann. 1943 Cum. Supp. § 7.957).—Reporter.

shall be situated, * * * no suit or proceeding shall thereafter be instituted by any person * * * to set aside, vacate or annul the said deed." 1 Comp. Laws 1948, § 211.431 (Stat. Ann. 1947 Cum. Supp. § 7.661).

"Every owner of land is chargeable with notice that a tax will be levied on it each year. It is no hardship to require that he shall appear at the hearing in court and raise any question affecting the manner of the assessment as well as the validity of the taxes, and secure such a decree as in law and equity protects his interests. * * *

"Approximately two and one-half years elapsed after the deed to Jerome was issued before plaintiff made any objection. The judge properly held that after the expiration of six months, it was too late to bring suit and that the tax sale and deeds are valid." *Caplan* v. *Jerome,* 314 Mich. 198, 203.

Title to the north 40 vested in the State in 1942 at the expiration of the period of redemption. Assuming, as plaintiffs claim, that some of the assessments were invalid, it does not follow that plaintiffs are now entitled to a reconveyance.

"Notwithstanding the irregularity in assessing the property in suit prevented going forward with the scavenger sale in February, 1940, it does not follow that appellant is entitled to relief on the theory that the taxes in question were voidable." *Schnackenberg* v. *State Land Office Board,* 307 Mich. 1, 6.

Plaintiffs also claim that they are entitled to redeem as of the time of filing of the bill of complaint, for the amount of the original taxes plus interest and penalties, on the theory that the north 40 was in fact assessed wherefore plaintiffs paid taxes on the north 40 instead of the south 40 which they acquired at the 1941 scavenger sale. This theory is inconsistent and the answer to this claim is plain, in the statute itself:

"If the auditor general shall discover before a deed of said lands is executed and delivered or contract therefor is executed under the provisions of this act, and before such lands shall have been otherwise encumbered, developed, improved or otherwise disposed of by the board or department, that said land was not delinquent  *  *  *  the auditor general shall upon payment of the amount due on said land as delinquent taxes, together with interest and penalties to date, so certify to the State land office board  *  *  *  which are hereby authorized and empowered to convey the land described in such certificate to the owner thereof." Act No. 155, § 3, Pub. Acts 1937, as amended (1 Comp. Laws 1948, § 211.-353 [Stat. Ann. 1947 Cum. Supp. § 7.953]).

The land was "otherwise disposed of" and for that reason plaintiffs do not come within the terms of the statute. Furthermore, the record conclusively shows that plaintiff Waldo Blunt never paid any taxes on the north 40 after acquiring the south 40 at scavenger sale.

Affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.