BRINKER *v.* AUDITOR GENERAL.

*In re* AUDITOR GENERAL'S PETITION FOR SALE
OF LANDS FOR 1942.

1. TAXATION—DELINQUENT TAXES—NOTICES—EVIDENCE.

Testimony of party seeking to set aside proceedings which had
resulted in sale of her land for taxes that a person in the
county treasurer's office had agreed to mail her a statement
of future taxes *held,* improbable or that the person making
it was an unauthorized person, where statute imposes duty
upon county treasurer of mailing delinquent tax notices but
does not make it a function of such treasurer to mail notice
of nondelinquent taxes, also evidence shows plaintiff ought
to have known that the county treasurer would not have
a statement of the taxes before they became delinquent (CL
1948, § 211.61a).

2. SAME—NOTICES.

A taxpayer is not entitled to charge the *township* treasurer with
notice of her request of the *county* treasurer for tax notice.

3. SAME—PAYMENT—DELINQUENCY—SALES.

Everybody is presumed to expect that his property is taxed and
to know when and where the taxes are payable, and that, if
not paid, they will be returned, and proceedings taken to
obtain a decree requiring payment, and directing sale of the
premises if payment is not made as required by the decree.

4. SAME—FAILURE TO RECEIVE NOTICE.

The failure of a property owner to receive or serve notice that
taxes on property are due will not alone invalidate proceedings
taken under the auditor general's petition and decree of the

REFERENCES FOR POINTS IN HEADNOTES

[1-5] Generally as to notice of taxes, see 51 Am Jur, Taxation
§ 944.
[8, 9] 11 Am Jur, Compromise and Settlement §§ 6, 18.
[10] 14 Am Jur, Costs § 91.

circuit court, in foreclosure and sale of the land for taxes
(CL 1948, § 211.61a).

5. SAME—INQUIRY AT COUNTY TREASURER'S OFFICE AS TO CURRENT
TAXES.

An owner of property located in a township did not exercise ordi-
nary diligence in ascertaining whether or not taxes were due
on her property for the year by making inquiry in October at
the county treasurer's office since the county treasurer would
not have the tax roll for that year even 2 months later.

6. SAME—UNDERSTANDING AS TO NOTICE WITH COUNTY TREASURER'S
OFFICE—PUBLIC INTEREST.

Any understanding a taxpayer might have with a clerk in the
county treasurer's office as to notice of future taxes on her
property would not be enforceable by an equity court, as
such an understanding would be contrary to the public in-
terest as an encouragement to default in the payment of the
taxes to the township treasurer and the public interest demands
prompt payment to the latter treasurer.

7. SAME—NOTICE TO TOWNSHIP TREASURER OF OWNERSHIP—DELIN-
QUENCY IN PAYMENT.

Property owner who never saw the local supervisor, who was
the assessing officer, nor the township treasurer for several
years, and who planned deliberately not to pay her taxes
promptly but only after they had been returned to the county
treasurer as delinquent and who failed to pay taxes on some
of her property will not be issued a certificate of error nor
granted cancellation of auditor general's deed.

8. COMPROMISE AND SETTLEMENT—SUBJECT MATTER—ACTION—CON-
SIDERATION.

Any dispute which can be the subject of an action or a suit
may be the basis of a compromise, and its settlement will
afford a consideration therefor.

9. SAME—CONSIDERATION—ADVICE OF ATTORNEY.

Property owner's settlement with purchaser of such property
at scavenger sale for less than the value of the land and the
buildings thereon will not be disturbed, where it appears that
the purchasers had yielded a sufficient consideration for the
settlement and it was made on an attorney's advice.

10. COSTS—PUBLIC QUESTION—TAX DEEDS—REPURCHASE OF LAND.

No costs are allowed in suits to set aside tax deed and to enforce
repayment of sums expended in repurchase of land, matters
of public interest being involved.

Appeal from Macomb; Noe (Alton H.), J. Submitted January 6, 1954. (Docket Nos. 8, 9, Calendar Nos. 45,962, 45,963.) Decided February 18, 1954.

Bill by James S. Brinker and Loretta Brinker against Murl K. Aten, Auditor General, State Land Office Board, Carl W. Cecil and Frances Cecil, and William G. Miller, treasurer of Macomb county, to set aside deed, enforce a certificate of error on tax sale, and to enforce payment of sums expended in repurchase of land.

Petition by the same parties in the matter of Vernon J. Brown, Auditor General, for the sale of lands for taxes of 1942, for modification of decree.

Cases consolidated. Bill of complaint and petition dismissed. Plaintiffs appeal. Affirmed.

*Thomas L. Thomson,* for plaintiffs.

*John T. Lungerhausen,* for defendants Cecil.

*Frank G. Millard,* Attorney General, and *Elbern Parsons,* Chief Assistant Attorney General, for defendants Auditor General and State Land Office Board.

REID, J. The above entitled 2 cases were consolidated for the purpose of hearing. In one case petitioners seek to set aside a tax sale in the proceeding for the sale of lands for taxes of 1942 so far as concerns the sale and proceedings leading to the sale of a 2-acre tract owned by petitioner Loretta Brinker. The other case is a bill in chancery to require defendants Cecil to repay to plaintiffs, $4,900 with interest from April 24, 1947, which sum of money plaintiff paid defendants Cecil for a quitclaim deed

of the 2 acres in question, defendants Cecil being purchasers at the scavenger sale.

Plaintiff Loretta being the owner of the land before the sale to the State for tax delinquency, is the person hereinafter spoken of as plaintiff. Plaintiff claims that she made a good-faith effort to pay the taxes of 1942 in the month of October, 1942, at which time she paid the delinquent taxes for 1941 and 1940 upon said 2 acres; that she paid such delinquent taxes to the county treasurer for Macomb county and received from the county treasurer, or a clerk at his office, the assurance that notices of future taxes would be mailed to her. Plaintiff further claims that the proceedings for the sale of the 2 acres for the taxes of 1942 ought to be set aside because she did not receive notice of the fact of such taxes being delinquent after having been assured that she would receive the notice.

Plaintiff Loretta was the owner of 12.13 acres of land in Warren township, situated westerly of a dead-end street (Lorraine street) which leads out to Twelve-Mile road and situate parallel with and about a half mile east of Van Dyke avenue. Plaintiff's sister Leona Brinkman had owned the 12.13 acres. Her father had bought the land from a Mr. Hartsig and after her father's death, plaintiff's sister Leona Brinkman obtained the vendee's interest in the 12.13 acres. Plaintiff and her husband had a different piece of property which in 1939 they exchanged for vendee's interest in the 12.13 acres (hereinafter referred to as 12 acres) which had been bought by Leona Brinkman.

Plaintiff paid $500 for the 12 acres to Mr. Hartsig who seems to have had a vendor's interest in the 12-acre tract prior to that time. The 12 acres was without frontage on any highway and plaintiff bought a 2-acre tract from her sister Leona Brinkman for $200 in 1940, but the deed, exhibit 2 (apparently of

vendor's interest) was from Hartsig and wife to plaintiff Loretta. The purchase of the 2-acre tract was necessary in order to connect the 12-acre tract with the highway, Lorraine street. Plaintiff knew at the time she paid up the taxes in 1942 that the 2-acre tract was assessed in the name of her sister Leona Brinkman. She testified:

"I never paid a tax on the 12 acres before it actually became delinquent."

Plaintiff further testified,

"Tax bills were sent to Leona Brinkman instead of Loretta Brinker."

And further,

"I know that people pay their taxes to the township treasurer."

Plaintiff testified,

"The taxes were never sent to me but to my sister Leona Brinkman."

Plaintiff did not record her deed to the 2 acres until she had settled with the defendants Cecil in 1947 as hereinafter set forth. She never went to the township office, never gave her address to the township treasurer nor requested him to mail the tax statements to her. She deliberately adopted a plan of letting her taxes become delinquent until they were returned to the county treasurer as delinquent. Plaintiff claims to have had little education but she went through the 8th grade in the schools.

In explanation of her not putting her deed to the 2 acres on record, she swears to a remarkable story, that she took it to the register of deeds and said she wanted to record it and that she (meaning a clerk in the register of deeds' office) wouldn't listen to plaintiff but said, "You're not a widow and you ought to

have your husband's signature on it," that the clerk refused to record the deed and told plaintiff to take it back to Mr. Hartsig and tell him to put plaintiff's husband's name on it and "She threw the deed at me." It is incredible that a clerk in the register of deeds' office in Mt. Clemens ever gave her such gratuitous and utterly uncalled for and improper advice or refused to record a properly-executed and ten-tered deed or told her that her husband's signature as a *grantee* was necessary on the deed. The many inconsistencies in the testimony of plaintiff are persuasive of the unreliability of her testimony. Plaintiff received a statement or "bill" of her 1942 taxes and did not notice that the taxes for the 2 acres were not included. She did not pay the 1942 taxes on the 12-acre tract until October 10, 1944, at which time they were delinquent.

For the unpaid taxes of 1942 on the 2-acre tract, that tract was sold to the State in a tax-sale proceeding begun by the auditor general, February 6, 1945, and by the State sold at scavenger sale to defendants Cecil for $880. The date of sale to Cecil does not appear but the deed was issued to defendants Cecil, March 31, 1947, recorded April 21, 1947.

About March 14, 1947, defendant Carl W. Cecil called at plaintiffs' house, which had been built on the 2-acre tract, and then or later discussed the proposition of plaintiff paying Mr. Cecil $5,600, for a title to the land which he had purchased on scavenger sale.

Plaintiff further testified:

"We went to see Mr. Nunneley [a highly respected and competent attorney] and told him the situation. This thing had not progressed very far when we saw Mr. Nunneley. We did not know how we were going to pay. Mr. Nunneley advised us that we would have to pay whatever he asked. He says to handle the man with kid gloves and pay the man

what he asks you. He said it was too late to stop him. That was all he advised us; that we would have to pay the money in order to keep the house."

Some days after consulting with attorney Nunneley, upon Mr. Cecil's again coming to the residence of plaintiffs, plaintiff agreed to and did pay Mr. Cecil $4,900, for a quitclaim deed, dated April 24, 1947.

Plaintiff admits receiving tax bills including the bill for 1942 for the 12 acres from the *township* treasurer. The bill contained in bold type a direction to make remittances payable to the township treasurer and gave his name and address. Plaintiff never directed the township treasurer to mail the bills directly to plaintiff, never noticed that the bill for 1942 and later bills for subsequent years, did not contain a description of the 2 acres, though "12.13 A." was plainly typed on the face of the bill. Plaintiff never paid any of these bills until delinquent, including the 1942 bill, which also did not have the 2-acre description. Plaintiff claims she relied on an agreement with some unidentified clerk in the office of the county treasurer, to mail her a statement of future taxes, after they had become delinquent on the 2 acres. We feel justified in disregarding plaintiff's testimony concerning any undertaking on the part of the county treasurer to mail her a notice. It is not shown that the person who made this statement was a deputy county treasurer or any person authorized to make it. The mailing of nondelinquent tax notices is not a function of the county treasurer. The county treasurer may be specially directed by the board of supervisors to issue *delinquent* tax statements and is so required by the statute. The statement of any clerk in the office of the county treasurer that they would mail a notice of future taxes when the taxes became due (not delinquent) is so entirely out of the

course of procedure in that office that the testimony of plaintiff that any such statement was made to her ought to be viewed as improbable, or the person making it an unauthorized person. Plaintiff ought to have known that the county treasurer would not have a statement for 1942 taxes before they became delinquent. Plaintiff had received tax bills from the township treasurer and well knew that the township treasurer would have the tax roll for 1942 and plaintiff should have asked the township treasurer for a statement of her taxes including the 2 acres on December 1, 1942 or at least before the tax became delinquent. Plaintiff was not entitled to charge the *township* treasurer with notice of her request of the *county* treasurer for tax notice.

In *Auditor General* v. *Sparrow,* 116 Mich 574, we say at page 589:

"Everybody is presumed to expect that his property is taxed, and to know when and where the taxes are payable, and that, if not paid, they will be returned, and proceedings taken to obtain a decree requiring payment, and directing sale of the premises if payment is not made as required by the decree."

Plaintiff was not a beginner in regard to payment of taxes. She testified:

"We always paid our taxes in the city of Detroit."

The statute by which the county treasurer is required to send out notices of taxes delinquent is that in CL 1948, § 211.61a (Stat Ann § 7.106), which makes provision for certain things to be done after the auditor general's petition has been filed with the county clerk, a proceeding looking toward annual tax sale, and the act specifically provides, "That failure to receive or serve such notice shall not invalidate the proceedings taken under the auditor general's petition and decree of the circuit court, in

foreclosure and sale of the land for taxes." By analogy, defendants argue that even if plaintiff had been assured by the county treasurer of notice of future delinquencies, failure to send her such notice would not invalidate the tax sale proceedings.

Plaintiffs cite *Hough* v. *Auditor General*, 116 Mich 663, in which case, however, the taxpayer inquired on December 1, 1892, of the city treasurer the amount of the 1892 taxes. The 1892 tax roll was not yet on December 1, 1892, in the hands of the city treasurer, though the law required that it be there on that day. The taxpayer was not in default, was inquiring of the officer who on the day of the inquiry should have had the tax rolls in his hands, showing the amount, so that the taxpayer might pay. The taxpayer in the *Hough Case* was guilty of no dereliction whatsoever and there was dereliction on the part of the public tax-collecting agency. In the present case, plaintiff did not exercise ordinary diligence, after having inquired in October, 1942, the amount of the 1942 taxes, at the office of the *county* treasurer. The county treasurer would not even on December 1, 1942, have the tax roll for 1942 on hand.

If plaintiff ever had any understanding with a clerk in the office of the county treasurer that the clerk was to notify her of the future taxes on the 2 acres, such understanding was contrary to the public interest and should not be respected nor enforced by an equity court, for it would be an encouragement to plaintiff to default in the payment of the taxes to the *township* treasurer and wait until the taxes had been returned delinquent to the county treasurer's office, and then that the clerk in question would send plaintiff notice as the sure way to avoid her lands being taken for taxes. The claimed understanding with the county treasurer's clerk, would tend to delay payment of taxes until after delinquency had

occurred, whereas the public interest demanded promptitude of payment to the *township* treasurer. If she had made a practice of paying her taxes to the township treasurer before they became delinquent, she would have been asked to give to the township treasurer her address so that she could have been notified of her future taxes promptly and could have paid without delinquency and without added penalties.

In *Goldsboro* v. *Lucas,* 307 Mich 497, an inquiry had been made by a taxpayer about taxes on 12 lots; later the county treasurer mailed the taxpayer a statement of the 1936, 1937 and 1938 taxes on 10 lots but made no mention of lots 131 and 132; the taxpayer sent the county treasurer a check for $32.40, the amount mentioned by the county treasurer and asked the county treasurer as to lots 131 and 132. The county treasurer never replied to this letter and the taxpayer (plaintiff Goldsboro in that case) concluded from the county treasurer's silence that the 2 lots 131 and 132 had been included in the payment, which 2 lots however were later forfeited for unpaid taxes and sold by the State to defendant Lucas in a scavenger sale. Because of the mistake of the county treasurer in not including the 2 lots in the notification of the amount of taxes then unpaid, Goldsboro was given back his 2 lots by the decree. It will be seen that the *Goldsboro Case* had to do with unpaid and past due taxes, whereas the instant case has to do with the claimed agreement of a clerk in the county treasurer's office to notify plaintiff of *future* taxes not yet even due and of which that clerk would not have the tax roll, the record of the tax, even when the tax should become due, which tax roll would of course be in the *township* treasurer's office.

In *Winkle* v. *Neitzel,* 305 Mich 40, we say (per syllabus 1):

"Inquiry of landowner at tax collector's office concerning tax status of her property without presenting a description of the land including adjacent 25-foot strip to which title had recently been quieted in her and which she had used for driveway purposes for a considerable time but for which she had taken no steps to have the property properly assessed in her name did not constitute a good-faith effort to pay taxes equivalent to payment entitling her to certificate of error or cancellation of deed by auditor general since there was in fact no error by public officials involved (CL 1929, §§ 3462, 3490, as amended by PA 1941, No 234)."

Plaintiff Loretta, an owner of real estate in Warren township for several years, never saw the local supervisor, who was the assessing officer, nor the township treasurer, either of which officers could have advised her of the evil of her practice of delinquency. The deliberate plan of plaintiff in not paying her taxes promptly and only after the taxes had been returned to the county treasurer as delinquent, was against public interest; her deliberately planned system of becoming delinquent in her tax payments, got her into her present difficulty from which an equity court will not extricate her.

Plaintiffs had the benefit of the advice of a competent and highly respected attorney of their own selection before they settled their differences with defendants Cecil, paid the consideration agreed on and received back a deed of the lands, the 2 acres in question, all in pursuance of attorney Nunneley's advice. Discussions between plaintiffs and Mr. Cecil lasted from March 14th to April 24th.

"Any dispute which can be the subject of an action or a suit may be the basis of a compromise, and its settlement will afford a consideration therefor." 11 Am Jur, p 250, citing many cases, including *Sanford* v. *Huxford*, 32 Mich 313.

Moreover, the settlement with Cecils was for less than the value of the 2 acres with the buildings, and Cecils certainly yielded a sufficient consideration for the settlement with plaintiffs.

The record discloses no reason whatsoever for disregarding and overturning the settlement made on the attorney's advice. The settlement must stand.

The trial court dismissed the petition of plaintiffs for the cancellation of the sale of the 2-acre tract and dismissed the bill of complaint filed by the plaintiffs in the chancery proceeding to require Cecil to repay to plaintiffs the $4,900 with interest. The action of the trial court in thus dismissing the 2 cases was proper and it is sustained. The decrees appealed from are affirmed. No costs, matters of public interest being involved.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, and Kelly, JJ., concurred with Reid, J.

Dethmers, J., concurred in the result.