JW HOBBS CORPORATION v DEPARTMENT OF TREASURY

Docket No. 254069. Submitted July 12, 2005, at Lansing. Decided
September 1, 2005, at 9:00 a.m. Leave to appeal sought.

   J.W. Hobbs Corporation brought an action in the Court of Claims
   against the Department of Treasury seeking recovery of single
   business taxes, interest, and penalties it paid under protest. The
   plaintiff is an Illinois company that hired an independent contrac-
   tor to sell its product in several states. For that purpose, the
   independent contractor employed a salesman in Michigan, who
   also sold the products of other businesses and sold the plaintiff's
   inventory from a catalog without keeping any of the plaintiff's
   property in Michigan. The court, Beverley Nettles-Nickerson, J.,
   granted the plaintiff summary disposition in part, ordering a
   refund of its single business taxes, with interest, for 1989 through
   1997 after concluding that the defendant was bound by its own tax
   bulletins in effect for those years, which had indicated that a
   business activity nexus with Michigan did not exist for activities
   such as the plaintiff's activities. The court denied the plaintiff a
   refund for 1998 through 2000. The defendant appealed by delayed
   leave granted, and the plaintiff cross-appealed.

      The Court of Appeals *held*:

      1. Retroactive application of the substantial nexus standard
   for imposing the single business tax is allowed, although not
   required. While the defendant's decision in 1998 to apply the
   standard retroactively has blindsided the plaintiff, which had
   complied with the defendant's published standards and planned
   its business accordingly, the Court of Appeals must uphold that
   application. The defendant's tax bulletins issued before 1998, on
   which the plaintiff relied, were issued under MCL 205.3(f) and
   were not binding guidelines adopted under the Administrative
   Procedures Act. They were only interpretations of the applicable
   statutes without the force of law.

      2. The applicable test for a substantial nexus allowing the
   imposition of the single business tax is that stated in *Rayovac Corp
   v Dep't of Treasury*, 264 Mich App 441 (2004). The presence of any
   sales force at all in Michigan provides the presence necessary for
   finding a substantial nexus. This case must be remanded for the

trial court to determine by the appropriate nexus standard whether minimum contacts have been established.

3. The trial court did not err by upholding the penalties assessed for 1998 through 2000. The plaintiff was aware of the defendant's new interpretation of the nexus standard, which was supported by case law and statute. While the plaintiff may have been annoyed or frustrated by the change, deliberately ignoring the new standard and the requirements of the defendant's 1998 revenue bulletin is not reasonable cause for waiver of the penalties pursuant to MCL 205.24 and 1999 AC, R 205.1013. The plaintiff's argument that it could not rely on the 1998 bulletin after the defendant had changed its standard over the course of several years does not present an honest difference of opinion giving rise to reasonable cause.

Reversed in part and affirmed in part; remanded for further proceedings.

O'CONNELL, P.J., dissenting, stated that, because the panel cannot overrule *Rayovac*, it should affirm this case on the ground that the salesperson, who was employed by an independent contractor and did not deal exclusively in the plaintiff's goods, did not create the necessary presence in Michigan to constitute a "sales force" within any meaningful interpretation of the term.

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin, June Summers Haas,* and *Daniel L. Stanley*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the defendant.

Before: O'CONNELL, P.J., and SCHUETTE and BORRELLO, JJ.

SCHUETTE, J. In this tax case, defendant Department of Treasury appeals by delayed leave granted the January 14, 2004, order granting in part plaintiff's motion for summary disposition under MCR 2.116(C)(10). Plaintiff cross-appeals. We reverse in part and affirm in part and remand.

I. FACTS

Plaintiff J.W. Hobbs Corporation is a Springfield, Illinois, based company. Defendant contends that from January 1, 1989, to March 31, 2000, plaintiff was subject to the Michigan single business tax (SBT). During this period, plaintiff contracted with the Brookfield, Wisconsin, firm of Ziegenbein & Associates to act as an independent contractor to sell plaintiff's products in multiple states, including Michigan. Ziegenbein employed George Piper, who resided in Bloomfield Hills, Michigan, as a salesman. In addition to plaintiff's products, Piper also sold the products of two other businesses completely unrelated to plaintiff. Piper sold inventory from a catalog and did not keep any of plaintiff's property in Michigan.

The present case arose when defendant conducted a single business tax field audit of plaintiff for the period of January 1, 1990, to March 31, 2000. During this period, plaintiff had not filed Michigan SBT returns nor had it paid Michigan SBT pursuant to MCL 208.1 *et seq.* Defendant determined that plaintiff was subject to the SBT and assessed plaintiff $207,120 in tax liability, $115,491.37 in interest, and $23,334 in penalties, for a total tax liability of $345,945.37. Plaintiff paid under protest and filed suit in the Court of Claims seeking refund of the amount paid, plus statutory interest, costs, and attorney fees.

Plaintiff asserted that defendant unlawfully assessed liability for the SBT because plaintiff did not have a sufficient nexus with Michigan. Plaintiff argued that it had no resident employees in the state and that its only contact was a nonexclusive independent contractor who solicited sales in Michigan, aided by plaintiff's employees during fewer than ten yearly visits to the state. Plaintiff stated that it did not pay the SBT in reliance

on two different bulletins disseminated by defendant: Revenue Administrative Bulletin (RAB) 1989-46 and SBT Bulletin 1980-1. These two bulletins provided interpretation of MCL 208.3(2), which defines "business activity" as

> a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, but shall not include the services rendered by an employee to an employer, services as a director of a corporation, or a casual transaction.

SBT Bulletin 1980-1, issued on May 1, 1980, attempted to clarify the extent to which business activity would qualify as a nexus and, thus, be taxed by defendant. It stated:

> The fact that a taxpayer is represented in Michigan by an employee exploring the Michigan market and taking orders to be approved and shipped from outside Michigan will not subject the taxpayer to the SBT. When the employee representing the taxpayer goes beyond the solicitation of sales and provides services for the customer, including but not limited to technical assistance, inventory, stock rotation, or services for the employer, including but not limited to collection of delinquent accounts, warranty work, exchange of damaged merchandise or negotiate [sic] settlement of a claim, sufficient nexus is established.

On May 31, 1989, defendant replaced SBT Bulletin 1980-1 with RAB 1989-46. RAB 1989-46 contained language nearly identical to that in the paragraph quoted from SBT Bulletin 1980-1 and noted that certain in-state activities would not cause the loss of immunity for otherwise immune sales.

In 1993, this Court issued decisions in *Gillette Co v Dep't of Treasury*, 198 Mich App 303; 497 NW2d 595 (1993), and in *Guardian Industries Corp v Dep't of Treasury*, 198 Mich App 363; 499 NW2d 349 (1993), that resolved the question of which federal standard set the "minimum contacts" a taxpayer must have with Michigan for this state to subject the taxpayer to the SBT. Following these decisions, defendant announced that it would consider the standard for SBT business activity to be whether there was a resident employee in the state. Defendant announced this position publicly in publications and at tax seminars. Then, on February 24, 1998, defendant issued RAB 1998-1, entitled *SBT Nexus Standards*. This bulletin provides that a sufficient nexus for application of the SBT is presumed when a nonresident employee or independent contractor is temporarily present in Michigan for two or more days in any year performing solicitations of sales regardless of whether the company has inventory in the state. Defendant also directed that this nexus standard should apply retroactively to 1989 on the basis of this Court's decision in *Syntex Laboratories v Dep't of Treasury*, 233 Mich App 286; 590 NW2d 612 (1998).

After a hearing in this case, the court issued a written opinion and order granting plaintiff's motion for summary disposition for the years 1989 through 1997, finding that defendant had admitted that under the SBT nexus standards issued before 1998, the presence of a nonexclusive independent contractor who was a resident of the state of Michigan and who solicited sales on behalf of a corporation did not create a business activity nexus in Michigan. The court concluded that this Court's decision in *Magnetek Controls, Inc v Dep't of Treasury*, 221 Mich App 400; 562 NW2d 219 (1997), was inapplicable to this case because *Magnetek* dealt only with "throwback" revenue under MCL 208.42. In

contrast, the court held that plaintiff's business activities in this case involve MCL 208.3. The court held that defendant was bound by RAB 1989-46; the more expansive nexus standard announced in *Gillette* was not incorporated into an RAB until the issuance of RAB 1998-1. Accordingly, the court held that plaintiff was entitled to a refund of the SBT paid for 1989 through 1997, along with interest. However, plaintiff was not entitled to a refund for single business taxes for the years 1998 through 2000. Defendant appeals, and plaintiff cross-appeals.

II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). MCR 2.116(C)(10) provides that summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In addition, statutory interpretation is a question of law that is reviewed de novo. *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 222; 668 NW2d 181 (2003). "Although tax laws are construed against the government, tax-exemption statutes are strictly construed in favor of the taxing unit." *Id.*

III. ANALYSIS

A. RETROACTIVE APPLICATION OF NEXUS STANDARD

Before 1993, when this Court decided *Guardian* and *Gillette,* the question of the threshold for application of Michigan's SBT remained unresolved. Applying a broader Due Process/Commerce Clause[1] nexus standard

---

[1] In *Guardian*, this Court noted that the Due Process Clause and the Commerce Clause are closely related, but they differ fundamentally in

found in federal case law, a taxpayer's solicitation of business in foreign states alone would create a sufficient nexus with the states that they may tax the sales. However, applying the federal statute, PL 86-272,[2] to the SBT, a taxpayer's mere solicitation of business would not be a sufficient nexus to impose taxation.

In *Gillette, supra* at 311, this Court found that PL 86-272 was inapplicable to the imposition of the SBT and that such taxation would instead depend on an analysis under the Due Process Clause and the Commerce Clause. In *Magnetek, supra* at 408, this Court noted that, under *Quill Corp v North Dakota*, 504 U S 298, 315; 112 S Ct 1904; 119 L Ed 2d 91 (1992), the substantial nexus requirement would be satisfied by "the presence in the taxing State of a small sales force, plant, or office[.]' " Alternatively, the conduct of economic activities in the taxing state, performed by either the taxpayer's personnel or others on its behalf, can satisfy the test for a substantial nexus. *Magnetek, supra* at 411-412, citing *In re Orvis Co, Inc v Tax Appeals Tribunal of New York*, 86 NY2d 165, 178; 654 NE2d 954; 630 NYS2d 680 (1995); see also *Kaiser Optical Systems, Inc v Dep't of Treasury*, 254 Mich App 517, 526-527; 657 NW2d 813 (2002).

In *Syntex*, this Court noted that the Due Process/Commerce Clause test is the proper test to determine the applicability of the SBT. *Syntex, supra* at 288. This decision was not, as plaintiff argues, limited to the determination of "throwback" taxes under MCL

---

several respects. Each poses distinct limitations on a taxing power of the state and each addresses different constitutional concerns. *Guardian, supra* at 373. The imposition of a tax may pass muster under the Due Process Clause but not the Commerce Clause. The nexus test derived from the Due Process Clause and the Commerce Clause requires a far less stringent nexus than the one found in the federal statute, PL 86-272.

[2] Codified at 15 USC 381 *et seq.*

208.42.[3] *Syntex* unequivocally held that the decision in *Gillette*, in which this Court adopted the Due Process/Commerce Clause test, may be applied retroactively, and stated:

> The general rule is that judicial decisions are to be given complete retroactive effect. Complete prospective application is generally limited to decisions that overrule clear and uncontradicted case law. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986). Retroactive application of a judicial decision will only violate due process when it acts as an ex post facto law. *People v Doyle*, 451 Mich 93, 100; 545 NW2d 627 (1996). However, the ex post facto rule applies only to criminal cases, not to civil cases. *Ludka v Dep't of Treasury*, 155 Mich App 250, 260; 399 NW2d 490 (1986). Nevertheless, retroactive application of a judicial decision can be "problematic" to due process requirements if it is unexpected and indefensible in light of the law existing at the time of the conduct. *Doyle, supra* at 104. Due process principles prevent retrospective laws from divesting rights to property or vested rights or from impairing contracts. *Detroit v Walker*, 445 Mich 682, 698; 520 NW2d 135 (1994). While petitioner may not have expected this Court to reject the PL 86-272 test, the Court's decision is not unexpected and indefensible because the appellate courts of this state had never resolved whether the PL 86-272 test was appropriate for determining single business tax liability, *Gillette, supra* at 307, n 1, and petitioner knew that the *Gillette* decision could affect its pending matter. In any event, petitioner did not have a vested right in the continuation of any tax law. *Walker, supra* at 703; *Ludka, supra*. Therefore, proper application of the law cannot be considered a due process violation in this case. [*Syntex, supra* at 292-293.]

Plaintiff argues that despite this case law, defendant is bound by its published interpretations in its RABs.

---

[3] A throwback tax is assessed when a Michigan taxpayer generates income in another state but does not pay the other state a tax on the income. The untaxed income is then "thrown back" to Michigan, where it is subject to the SBT.

Plaintiff notes that defendant has admitted that before issuing its new standard in 1998, it repeatedly and publicly[4] stated that in order to be subject to the SBT, a business needed to have physical presence in the state consisting of an office or a resident employee in the state.

The trial court determined that the RABs were "guidelines" adopted under § 24 of the Administrative Procedures Act (APA), MCL 24.224, and defined under § 3 of the APA as "an agency statement or declaration of policy which the agency intends to follow . . . ." MCL 24.203(6). The trial court mistakenly concluded that as guidelines adopted pursuant to the APA, the RABs were binding and could only be applied prospectively. RABs are actually issued under MCL 205.3(f), which allows defendant to "issue bulletins that index and explain current department interpretations of current state tax laws." Our Supreme Court has held that RABs are only interpretations of the applicable statutes and do not have the force of law. See, e.g., *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 21; 678 NW2d 619 (2004). In *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441, 448-449; 691 NW2d 57 (2004), this Court stated, "Moreover, defendant is not estopped from retroactively applying the new rule created by case law simply because it had issued revenue administrative bulletins advising taxpayers of what the then-applicable rule was." Thus, defendant is not legally bound to adhere to its stated interpretation of tax law in its RABs.

---

[4] Defendant published its position in its departmental newsletter, the *Tax Advisor* and announced its position at seminars for tax professionals, and defendant's staff taught this interpretation in text it created to educate tax professionals at Michigan State University and University of Michigan tax school programs. Furthermore, out-of-state taxpayers lacking employees who were residents of Michigan that attempted to voluntarily pay the SBT were told they had no filing responsibility.

Finally, the argument that new state taxing standards may not be imposed retroactively has been rejected by the United States Supreme Court in *Harper v Virginia Dep't of Taxation,* 509 US 86; 113 S Ct 2510; 125 L Ed 2d 74 (1993).

We note that defendant was correct in asserting that this Court allowed for a retroactive application of the taxing standards in *Gillette.* However, this Court did not conclude that this retroactive application was *required.* Thus, while defendant had the authority to retroactively apply the new taxing standard, such application was not mandatory. Though we are bound to uphold defendant's retroactive application of the SBT, we note that it is unfortunate that plaintiff and other similarly situated businesses are not able to trust the published bulletins of defendant. Defendant's decision to retroactively apply the new standard has blindsided plaintiff, which had correctly complied with the previous taxing standards and planned its business accordingly.

Judge O'CONNELL, in his Shakespearean dissent, attacks the actions of defendant in issuing conflicting interpretations of Michigan's SBT. While we share the sentiments of our colleague as stated in his eloquent soliloquy, we are unable to ignore the holding of *Rayovac* or to torch its application by distinguishing it away on the basis of the size of plaintiff's sales force. To ignore the application of *Rayovac* to this case, notwithstanding our shared disgust of the "bait and switch" tactics of defendant, would be contrary to binding precedent.[5]

---

[5] In response to Judge O'CONNELL's dissent and his villainous reference from *Hamlet,* we note that Shakespeare also wrote, "Though this be madness, yet there is method in't." Shakespeare, *Hamlet,* act 2, sc 2.

### B. NEXUS STANDARD

Plaintiff argues that *Magnetek* is not applicable and that defendant's nexus standard requiring a resident employee was the only standard for statutory business activity jurisdiction in Michigan after *Gillette*. These arguments are unpersuasive in light of this Court's recent application of *Magnetek* in *Rayovac*, which is very similar to the present case. In *Rayovac*, defendant Department of Treasury appealed the trial court's order granting summary disposition for plaintiff Rayovac Corporation, holding that Rayovac was not liable for payment of the SBT for the period July 1, 1989, through June 30, 1993. This Court reversed.

The *Rayovac* trial court ruled that the Commerce Clause, US Const, art I, § 8, cl 3, prohibited the defendant from collecting the SBT from the plaintiff, a Wisconsin seller of batteries in Michigan, because the plaintiff's Michigan sales staff was too small to create a "substantial nexus" between the corporation and Michigan. The trial court concluded that the presence in Michigan of three salespersons and one midwestern manager, who solicited but did not accept or approve orders, did not provide the required substantial nexus. *Rayovac, supra* at 442-443. This Court disagreed with the trial court and relied on the analysis in *Magnetek* to reverse, stating:

> We find this Court's analysis in *Magnetek*, albeit of a different fact situation, to be instructive. The *Magnetek* Court reasoned that *Quill* should be interpreted to preserve the bright-line rule by not giving any consideration to the substantiality of the physical presence of the sales force and, instead, finding that the presence of any sales force at all provides "more than a 'slightest presence' in [a] state[ ]," so that the substantial nexus will be found. *Magnetek, supra* at 410-412, citing *In re Orvis Co, Inc v Tax Appeals Tribunal of the State of New York,* 86 NY 2d 165, 176-178;

654 NE2d 954 (1995). Any other approach would negate the bright-line rule and invite chaos from a lack of certainty regarding precisely what size or character of a sales force would meet the standard. *Magnetek, supra* at 410, citing *Orvis, supra* at 177. [*Id.* at 445-446.]

Rayovac's arguments regarding the application of *Magnetek* were similar to plaintiff's arguments here: both argue that *Magnetek* does not apply because it addressed whether a Michigan company is immune from the SBT for that portion of its sales outside the state, not whether an out-of-state company is subject to the SBT. The *Rayovac* Court rejected this reasoning and concluded:

> The nature of Magnetek's contacts with other states was important because its sales to customers in states where Magnetek "is not taxable" are considered to be Michigan sales for the purpose of the SBT. MCL 208.52(c); *Magnetek, supra* at 404. To avoid the SBT, Magnetek would have to be subject to the other state's taxing jurisdiction "regardless of whether, in fact, the state does or does not" impose a tax. MCL 208.42; *Magnetek, supra* at 404. Accordingly, the constitutional question presented in *Magnetek* is identical to the constitutional question here: whether an out-of-state seller has sufficient contacts with another state to satisfy the "substantial nexus" requirement of the Commerce Clause permitting the other state to tax the out-of-state seller. Moreover, we find the reasoning of *Magnetek* persuasive without regard to whether it is deemed to control this case pursuant to MCR 7.215(C)(2). [*Id.* at 446.]

As in *Rayovac*, we extend *Magnetek*'s test to this case so that "the presence of any sales force at all provides more 'than a "slightest presence" in [a] state[ ],' so that the substantial nexus will be found." *Rayovac, supra* at 445 (citations omitted). We do not determine whether minimum contacts have been established, but remand

the issue for the trial court to determine using the appropriate nexus standard.

### C. COMMERCE CLAUSE VIOLATION

This issue was addressed by this Court's decision in *Rayovac.* The *Rayovac* Court specifically rejected the plaintiff's contention that application of a newly expanded SBT statutory jurisdiction standard discriminated against interstate commerce, stating:

> We agree with the trial court that if the SBT imposed here survives scrutiny under the Commerce Clause it will resolve the issues presented in this case. "A tax will sustain a Commerce Clause challenge when it: (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state." *Gillette, supra* at 313, citing *Complete Auto Transit, Inc v Brady,* 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977), and *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400, 415; 488 NW2d 182 (1992).
>
> In *Quill,* the United States Supreme Court reaffirmed its holding in *Nat'l Bellas Hess, Inc v Illinois Dep't of Revenue,* 386 US 753, 758; 87 S Ct 1389; 18 L Ed 2d 505 (1967), that an out-of-state seller whose only contacts within the taxing state were by mail or other common carrier lacked the "substantial nexus" required by the Commerce Clause. *Quill, supra* at 312. The Court noted that the Commerce Clause draws a sharp distinction between sellers who have a physical presence in the taxing state and those who do not. *Id.* at 311-312, citing *Nat'l Geographic Society v California Bd of Equalization,* 430 US 551, 559; 97 S Ct 1386; 51 L Ed 2d 631 (1977). The bright-line physical presence requirement of *Bellas Hess* furthers the purpose of the Commerce Clause by prohibiting undue burdens on interstate commerce and creating a safe harbor for vendors who only market their products to customers in the taxing state by common carrier or the United States mail. *Quill, supra* at 314-315. Thus, whether

a state may impose a tax on an out-of-state seller "may turn
on the presence in the taxing State of a small sales force,
plant, or office." *Id.* at 315; see, also, *Gillette, supra* at 313.
[*Id.* at 444.]

The difference between this case and *Rayovac* is that
the trial court in *Rayovac* held that the Commerce
Clause prohibited the imposition of the SBT on the
plaintiff. In the present case, the trial court found that
plaintiff's challenge to the application of the SBT as a
violation of the Commerce Clause failed. The trial
court's opinion makes clear that its grant of summary
disposition was based on its determination that defen-
dant could not retroactively apply the SBT due to the
legally binding nature of the RABs. The trial court did
not perform the nexus test that is required by *Magnetek*
and *Rayovac*. Thus, the trial court's partial grant of
summary disposition is reversed, and on remand the
question remains whether plaintiff's part-time indepen-
dent contractor-salesman and a handful of yearly visits
by other employees is enough contact for the applica-
tion of the SBT using the correct nexus test.

### D. TAX PENALTY

Plaintiff was assessed penalties only for the tax years
1998 through 2000, which were upheld by the trial
court. The trial court ordered that "[p]laintiff is entitled
to the return of the moneys paid for the 1989-1997 tax
years with any interest or penalty assessed[.]" Plaintiff,
in its brief on cross-appeal, argues that it should not
have to pay interest[6] on its entire assessment. Defen-
dant, in its brief on appeal, does not raise the issue

---

[6] Plaintiff states that the interest assessed amounts to "over half a
million" dollars. It is not certain how plaintiff calculated this number, as
the case documents only show that plaintiff was assessed $115,491.37 in
interest, which it paid under protest.

whether interest was properly assessed for 1989 through 1997, nor does defendant address this issue in its brief as cross-appellee. Thus, the interest issue is not properly before this Court. To have standing to bring an appeal, a party must be aggrieved by the lower court's decision. *Rymal v Baergen*, 262 Mich App 274, 318; 686 NW2d 241 (2004).

The issue of the penalties assessed only for tax years 1998 through 2000 is properly before this Court. MCL 205.24 provides authority for the imposition of a penalty and states in relevant part:

> (1) If a taxpayer fails or refuses to file a return or pay a tax administered under this act within the time specified, the department, as soon as possible, shall assess the tax against the taxpayer and notify the taxpayer of the amount of the tax. A liability for a tax administered under this act is subject to the interest and penalties prescribed in subsections (2) to (5).

> (2) Except as provided in subsections (3), (6), and (7), if a taxpayer fails or refuses to file a return or pay a tax within the time specified for notices of intent to assess issued on or before February 28, 2003, a penalty of $10.00 or 5% of the tax, whichever is greater, shall be added if the failure is for not more than 1 month, with an additional 5% penalty for each additional month or fraction of a month during which the failure continues or the tax and penalty is not paid, to a maximum of 50%. Except as provided in subsections (3), (6), and (7), if a taxpayer fails or refuses to file a return or pay a tax within the time specified for notices of intent to assess issued after February 28, 2003, a penalty of 5% of the tax shall be added if the failure is for not more than 2 months, with an additional 5% penalty for each additional month or fraction of a month during which the failure continues or the tax and penalty is not paid, to a maximum of 25%. In addition to the penalty, interest at the rate provided in section 23 for deficiencies in tax payments shall be added on the tax from the time the tax was due, until paid. After June 30, 1994, the penalty

prescribed by this subsection shall not be imposed until the department submits for public hearing pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, a rule defining what constitutes reasonable cause for waiver of the penalty under subsection (4), which definition shall include illustrative examples.

\* \* \*

(4) If a return is filed or remittance is paid after the time specified and it is shown to the satisfaction of the department that the failure was due to *reasonable cause and not to willful neglect,* the state treasurer or an authorized representative of the state treasurer shall waive the penalty prescribed by subsection (2). [Emphasis added.]

The administrative rule, 1999 AC, R 205.1013 defines reasonable cause for failure to pay, stating in relevant part:

(2) If a return is filed or a remittance is paid after the time specified, the taxpayer may request that the commissioner of revenue waive and the commissioner shall waive the penalty authorized by section 24(4) of the act if the taxpayer establishes that the failure to file the return or to pay the tax was due to reasonable cause and not to willful neglect.

(3) A waiver of penalty request shall be in writing and shall state the reasons alleged to constitute reasonable cause and the absence of willful neglect.

(4) The taxpayer bears the burden of affirmatively establishing, by clear and convincing evidence, that the failure to file or failure to pay was due to reasonable cause.

(5) A taxpayer is required to exercise ordinary business care and prudence in complying with filing and payment requirements.

Here, plaintiff unpersuasively argues that defendant had changed its nexus standard for a third time and plaintiff did not know if it could rely on this change.

Defendant changed its interpretation of the nexus standard on the basis of rulings from this Court. Plaintiff was undoubtedly annoyed and frustrated by defendant's actions, but deliberately choosing to ignore the new standard is not "reasonable cause." Plaintiff was aware of RAB 1998-1 and knew that it required plaintiff to file returns and pay the SBT. Plaintiff argues that the Tax Tribunal has held that the "reasonable cause" standard has been satisfied when the position advocated by the taxpayer represents "an honest difference of opinion" relative to the effect or application of law. Here, defendant's opinion was supported by Michigan case law and statute. Plaintiff's argument that it did not know if it could rely on RAB 1998-1 because the nexus standard had changed over the course of several years does not present an honest difference of opinion. Therefore, this Court affirms the trial court's ruling on penalties.

Reversed in part and affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

BORRELLO, J., concurred.

O'CONNELL, P.J. (*dissenting*). In *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441, 444-448; 691 NW2d 57 (2004), this Court braided three separate concepts it gleaned from distinct branches of law into a single lash that enabled defendant to drain years of back taxes from an unwitting Wisconsin battery manufacturer that claimed it was not, and never had been, subject to Michigan's single business tax. The first concept was a neutered "nexus" requirement that allowed defendant to tax any manufacturer that ever sent a living representative into the state to solicit purchase orders. The second was the retroactive effect of opinions, regardless of how potentially devastating, unforeseeable, and in-

equitable. The third, and most sinister, was the idea that
the manufacturer could not estop defendant from collect-
ing the taxes even though defendant had issued official
advice and memoranda reassuring the manufacturer that
it could do business in the state without fear of taxation.[1]

The majority in this case takes up these lithe con-
cepts and adds a twist, surmising that, although it is not
sure whether defendant's latest grasp at liberalizing the
"nexus" requirement violates the Constitution, defen-
dant may nevertheless stretch as far back through the
years as it chooses and fill its treasury with whatever it
may find. This grand grope is allowed despite defen-
dant's years of inveigling official statements declaring
that its arms were too short to tug on plaintiff's
coattails, let alone reach into its pockets.[2]

Because this panel lacks the power to overrule *Ray-
ovac*,[3] I would simply distinguish it on the basis that the

---

[1] If I were writing on a clean slate, I would require defendant to follow
its own published interpretations contained in Revenue Administrative
Bulletin 1989-46 and its SBT Bulletin 1980-1. To hold otherwise allows
defendant to "bait and switch" taxation policies, increasing business
transactions in the immediate future and setting the stage for a surprise
tax on those transactions after they are completed and irreversible. Cf.
*Newsweek, Inc v Florida Dep't of Revenue*, 522 US 442, 444; 118 S Ct 904;
139 L Ed 2d 888 (1998). I find that position untenable. Tea has been
thrown into Boston Harbor over taxing tactics less onerous than this
oppressive retroactive exaction. At least the 1773 Parliament did not
subject American colonists to a tax on tea they had already drunk.

[2] Not only does defendant's sudden policy switch blow a dark cloud over
this state's credibility, it forces out-of-state businesses to think twice
about doing business in this state. Plaintiff has learned the hard way the
truth of Hamlet's exhortation that an administrator "may smile, and
smile, and be a villain . . . ." Shakespeare, *Hamlet*, act 1, sc 5. Trust is the
cornerstone to a good business foundation, and if an outside business
cannot trust this state's interpretation of its own tax laws, how can it
trust the state enough to build and grow here?

[3] I note that, absent *Rayovac*, there is sufficient legal basis to deny
defendant the retroactive relief it requests. Defendant's repeated, con-

manufacturer's sales force in that case consisted of three salespeople and their regional manager. While negligible, this meager "force" arguably fell within the meaning of the phrase "sales force" as it was used in *Quill Corp v North Dakota*, 504 US 298, 315; 112 S Ct 1904; 119 L Ed 2d 91 (1992), to describe a satisfactory "nexus" between the manufacturer and a taxing state. In this case, the solitary "salesperson" was employed by an independent contractor and did not deal exclusively in plaintiff's goods. Therefore, plaintiff did not have the necessary "presence" in this state and the salesperson cannot represent a sales "force" within any meaningful interpretation of that word. *Quill Corp, supra* at 311, 315; see also *Rayovac, supra* at 444. The salesperson did not transfer any title to goods because he merely relayed the sales through a catalog. Cf. *Rayovac, supra* at 447. Therefore, not even a liberal interpretation of the *Quill Corp* nexus requirement would support a finding of a nexus in this case, and we should affirm the Court of Claims on this alternate ground.

sistent, and official reassurance that plaintiff's activities were not taxable should equitably estop it from recovering taxes it previously declared were not owed. *Fisher v Muller*, 53 Mich App 110, 127; 218 NW2d 821 (1974). It would be ignorant to assume that business decisions are not influenced by such a basic and inescapable economic force as taxation. The fact that defendant may have assessed penalties against plaintiff for following its advice and not paying the tax would also bear on the issue. I encourage the court, on remand, to allow plaintiff an opportunity to develop a record regarding the business decisions it made while suffering under the false sense of security offered by defendant's retracted assurance of immunity.