INTERNATIONAL HOME FOODS, INC
v DEPARTMENT OF TREASURY
LENOX, INC v DEPARTMENT OF TREASURY

Docket Nos. 253748, 253760. Submitted May 10, 2005, at Lansing. Decided October 4, 2005, at 9:10 a.m.

International Home Foods, Inc.; and Lenox, Inc., each brought an action in the Court of Claims against the Department of Treasury, challenging single business tax assessments for certain tax years in which the department had interpretive rulings stating that 15 USC 381, which prohibits the assessment of state income taxes against businesses whose activity in the taxing state is limited to maintaining a sales force that solicits orders to be filled out of state, applies to the single business tax. The defendant had abandoned that position following the decision in *The Gillette Co v Dep't of Treasury*, 198 Mich App 303 (1993), that the single business tax is a value-added tax, not an income tax. The court, Thomas L. Brown, J., decided in favor of the defendant, allowing it to retroactively apply the *Gillette* decision to the tax years during which its interpretive bulletins favored the taxpayers. The plaintiffs appealed, and their appeals were consolidated.

The Court of Appeals *held*:

The Department of Treasury may not retroactively apply a position less favorable to the plaintiffs than that contained in its previous ruling for activity occurring before the release of this Court's decision in *Gillette*. The department may reverse its interpretation of a statute, but its new interpretation applies only prospectively.

Reversed and remanded for further proceedings.

KELLY, P.J., dissenting, stated that the question concerning the retroactive application of *Gillette* had already been decided by the Court in *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441 (2004). Revenue administrative bulletins are only interpretations of the applicable statutes and do not have the force of law. The defendant is not estopped from applying a new rule created by case law simply because it had issued revenue administrative bulletins advising taxpayers of what the then-applicable rule was. *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38 (2005). The Court

should follow *Rayovac, JW Hobbs,* and other cases that resolved the issues raised in these cases in favor of the defendant.

TAXATION — DEPARTMENT OF TREASURY — INTERPRETIVE RULINGS — REVENUE ADMINISTRATIVE BULLETINS — RETROACTIVITY.

The Department of Treasury may not retroactively apply an appellate court decision favorable to the department to a tax year before the release of the decision if the department had in place an interpretive ruling or revenue administrative bulletin favorable to the taxpayer's position.

*Honigman Miller Schwartz & Cohn LLP* (by *Patrick R. Van Tiflin, June Summers Haas,* and *Daniel L. Stanley*) for the plaintiffs.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Glenn R. White,* Assistant Attorney General, for the defendant.

Before: KELLY, P.J., and SAWYER and WILDER, JJ.

SAWYER, J. We are asked in these cases to determine the applicability of this Court's decision in *The Gillette Co v Dep't of Treasury*,[1] to tax years before the release of that decision in which there was a Revenue Administrative Bulletin (RAB) in place that was favorable to the taxpayer. We hold that defendant may not retroactively apply a court decision favorable to defendant to a tax year before the release of that decision if defendant had in place an interpretive ruling favorable to the taxpayer's position. We reverse and remand.

Plaintiffs are businesses based outside Michigan whose sole presence in Michigan is a sales force that calls on Michigan businesses. That sales force, which works out of each salesperson's individual home, encourages the businesses to place orders for plaintiffs' products at plaintiffs' out-of-state offices. Those orders

---

[1] 198 Mich App 303; 497 NW2d 595 (1993).

are then processed and shipped to the Michigan customers from out-of-state locations. It is undisputed that under 15 USC 381, Michigan would be prohibited under federal law from imposing an income tax on plaintiffs' activities in Michigan. That statute prohibits a state from the collection of a business income tax where the only business activity conducted in that state is the solicitation of orders that are processed out of state. Before the *Gillette* decision, defendant took the position that the federal statute applied to Michigan's single business tax (SBT). But, in *Gillette,* this Court held that the SBT is not an income tax, but a value-added tax (VAT), and that 15 USC 381 is inapplicable to a value-added tax.[2]

In the cases at bar, defendant assessed SBT liability against plaintiffs not only for the tax years after the *Gillette* decision, but also for prior years that were still regarded as "open" at the time of the *Gillette* decision. Plaintiffs raise a number of issues challenging defendant's position, one of which we find dispositive.

Plaintiffs argue that, because defendant had in place an RAB favorable to plaintiff's position for the tax years before the *Gillette* decision was released, defendant is bound by that RAB. We agree. Defendant announced in two bulletins that it would apply the federal statute to Michigan's SBT. First, in Single Business Tax Bulletin (SBTB) 1980-1, defendant stated:

> In arriving at sufficient nexus, the Department will use the court cases developed under Public Law 86-272 [15 USC 381] as a guide.

Then in RAB 1989-46, which replaced SBTB 1980-1, defendant stated:

---

[2] *Gillette, supra* at 308-311.

In determining whether a taxpayer has sufficient nexus with Michigan, the Department will use the court cases developed under Public Law 86-272 [15 USC 381] as a guide when the business activity involves sales of tangible personal property.

RAB 1989-46 goes on to state:

The following in-state activities will not cause the loss of immunity for otherwise immune sales:

* * *

9. Soliciting sales by an in-state resident employee of the taxpayer, provided the employee maintains no in-state sales office or place of business (in-home or otherwise).

Public Law 86-272 provides immunity to certain in-state activities if conducted by an independent contractor that would not be afforded if performed by the taxpayer directly. Independent contractors may engage in the following limited activities in the State without subjecting the outstate taxpayer to single business tax:

1. Soliciting sales

2. Making sales

3. Maintaining a sales office.

Defendant's position was changed by this Court's decision in *Gillette* in a manner not anticipated by either the taxpayer or the tax collector. In *Gillette*, the petitioner argued that it was exempt from the SBT by virtue of 15 USC 381. The Treasury Department did not argue that the federal law did not apply to the SBT, but, rather, that it applied the federal law to that case and determined that, under the provisions of the federal law, the petitioner was liable for payment of the SBT.[3] This Court, noting that the respondent's brief asserted that the SBT was not an income tax, addressed an issue

---

[3] *Id.* at 307-308.

not raised by the parties: whether the federal law applied to the SBT.[4] This Court's conclusion in *Gillette* was one apparently not advanced by either party: that the federal law exempting certain activity by out-of-state companies from a state income tax does not apply to Michigan's SBT.

So the question becomes whether plaintiffs in these cases are subject to the SBT for tax years before the release of the *Gillette* decision or whether plaintiffs may rely on the previous rulings of defendant, which rulings applied the federal law to the SBT. We begin by noting that this Court held that *Gillette* may be applied retroactively in *Syntex Laboratories v Dep't of Treasury*.[5] But it did so only in response to a constitutional due process argument by the petitioner. The *Syntex* decision does not address the issue here, i.e., whether defendant is precluded from applying *Gillette* retroactively because of its previously published rulings.[6] We agree with plaintiffs that defendant is precluded from applying *Gillette* retroactively because of those rulings.

The issue whether defendant is bound by its earlier interpretive rulings was addressed in *In re D'Amico Estate*.[7] At issue in *D'Amico* was whether the provision that lottery winnings were exempt from state and local tax included an inheritance of lottery winnings (i.e., the right to receive future installments) was exempt from the inheritance tax. In *D'Amico*, the decedent had won a $1 million lottery prize payable over 20 years and died with 14 annual installments still owing. In accordance

---

[4] *Id.* at 307.

[5] 233 Mich App 286, 292-293; 590 NW2d 612 (1998).

[6] Similarly, this Court's recent decision in *JW Hobbs Corp v Dep't of Treasury,* 268 Mich App 38; 706 NW2d 460 (2005), which merely follows *Syntex,* does not address the issue we find controlling.

[7] 435 Mich 551; 460 NW2d 198 (1990).

with the defendant's practice, the inheritance tax examiner did not include the value of those future installments in the calculation of the inheritance tax due. But, the defendant thereafter changed its position regarding the applicability of the inheritance tax to lottery winnings and sought to collect the tax in that case.

Although there is language in the *D'Amico* decision that suggests that the majority believed that unpaid lottery proceeds were exempt from the inheritance tax on the basis of the applicable statute, ultimately the majority resolved the case on the basis of the previously announced position of the state regarding the issue. Specifically, the Court referred to a letter dated October 5, 1977, from an assistant attorney general to an attorney for an estate, with a copy to the Inheritance Tax Division of the Department of Treasury, stating that lottery winnings are not subject to the inheritance tax.[8] The defendant apparently followed that position until September 14, 1983, when it issued a communication to inheritance tax examiners stating that, on the basis of a decision in Macomb County, unpaid lottery winnings should be treated as a transfer of an asset, which would be subject to the inheritance tax.[9]

The *D'Amico* Court[10] made the following observation:

> For over a decade, the department construed § 34 of the Lottery Act [MCL 432.34] as exempting state lottery prize proceeds from inheritance taxation. Persons who bought lottery tickets during the regime when the department and field examiners were administering the inheritance tax law

[8] *Id.* at 558-559.

[9] *Id.* at 559 n 11.

[10] *Id.* at 562, quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 49.05, p 365.

as exempting lottery proceeds from inheritance tax should be accorded the benefit of the first, contemporaneous construction of the law:

"It has been held that an administrative agency having interpretive authority may reverse its interpretation of a statute, but that its new interpretation applies only prospectively."

The *D'Amico* opinion concluded:[11]

The Department of Treasury should be held to be bound by the first, contemporaneous construction by the state, at least with regard to the estates of persons who purchased lottery tickets before September 14, 1983, when the department advised inheritance tax field examiners of a "new development."

On the basis of the principles set forth in *D'Amico*, we conclude that defendant is bound by the position stated in its earlier RAB and cannot apply a different position to the detriment of a taxpayer for activity before March 1, 1993, the date of the release of this Court's opinion in *Gillette*.

Defendant attempts to distinguish *D'Amico* on the basis that in *D'Amico* the defendant had voluntarily changed its position on the interpretation of the law while in *Gillette* the change of position was imposed by this Court in its decision. Defendant relies upon an unpublished decision of this Court that held that *D'Amico* does not apply to the *Gillette* line of cases because in *D'Amico* defendant changed its position and then litigated the change, while in *Gillette* the change was forced upon defendant by this Court.[12] We are not bound by unpublished decisions of this Court[13] and choose not to follow that decision because it was incorrectly decided.

---

[11] *D'Amico, supra* at 564.

[12] *Topps Co, Inc v Dep't of Treasury*, unpublished opinion per curiam of the Court of Appeals, issued June 11, 1999 (Docket No. 203495).

[13] MCR 7.215(C)(1).

Nothing in the rationale of *D'Amico* would support a distinction between cases where defendant chooses first to change its position and those where the change is prompted by a court decision. Indeed, the rationale behind binding defendant to its interpretive positions is that taxpayers reasonably rely upon those interpretations.[14] A taxpayer will have made any number of decisions based upon its view of the tax laws, such as the determination of profits and whether to reinvest those profits or pay dividends on, its pricing structure, how it reports income on tax returns in other jurisdictions, and, potentially, even whether to do business in this state. While a taxpayer's interpretation of tax law is always subject to a determination that that interpretation is incorrect, *D'Amico* recognizes that a taxpayer should be able to proceed in reasonable reliance on defendant's official positions. And a taxpayer's reliance does not differ in situations where defendant voluntarily changes its interpretation of a statute or where that change is thrust upon the department by a court decision. Therefore, there is no legitimate basis on which to distinguish between the two situations in determining whether defendant should be bound by its earlier interpretation.

We do note that *Gillette* represents what must be a relatively unusual circumstance: a court rejecting a position of defendant that favors a taxpayer and imposing an interpretation that is less favorable to the taxpayer than even that advocated by defendant. That is, when a court decision forces defendant to change its position, that decision is most likely in the favor of the taxpayer, not defendant. While this unanticipated windfall to defendant provides a reasonable explanation why it did not place taxpayers on notice that it was changing

---

[14] *D'Amico, supra* at 559-560.

its interpretation, that does not change the taxpayers' reliance on defendant's interpretation. Indeed, if anything, the taxpayer's reliance is greater in these cases because there would be no basis for even anticipating that defendant would obtain a court decision less favorable to the taxpayer than the position it advocated because defendant would not even be seen as seeking such a decision.

We also note that this question was considered by this Court in a published opinion released after the parties filed their briefs in the case at bar. Our decision in *Rayovac Corp v Dep't of Treasury*[15] addresses many of the arguments raised by plaintiffs in these cases, such as violation of the Commerce Clause, the binding nature of guidelines under the Administrative Procedures Act, an unconstitutional "bait and switch," a claim of unfair and unjust treatment, and the application of the doctrine of laches. Thus, while *Rayovac* considered the argument whether defendant is bound by those earlier revenue rulings under various theories advanced by plaintiffs, it did not specifically consider the applicability of *D'Amico*. Accordingly, we do not view *Rayovac* as being dispositive on this point.

For these reasons, we hold that defendant may not apply a position less favorable to plaintiffs than that contained in its previous rulings for activity occurring before the release of this Court's decision in *Gillette*. In light of our decision on this issue, we need not address the remaining issues raised by plaintiffs.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs.

---

[15] 264 Mich App 441, 448-449; 691 NW2d 57 (2004).

WILDER, J., concurred.

KELLY, P.J. (*dissenting*). I respectfully dissent. The majority holds that "because defendant had in place an RAB [Revenue Administrative Bulletin] favorable to plaintiff's position for the tax years before the *Gillette* [*Co v Dep't of Treasury*, 198 Mich App 303; 497 NW2d 595 (1993)] decision was released, defendant is bound by that RAB." *Ante* at 358. Thus, according to the majority, defendant is prohibited from applying *Gillette* retroactively. However, the retroactive application of *Gillette* has previously been decided by this Court on the identical issues presented here. In *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441, 448-449; 691 NW2d 57 (2004), this Court held:

> The retroactive application of the SBT for the tax years at issue does not discriminate against or unconstitutionally burden interstate commerce. See *Harper v Virginia Dep't of Taxation*, 509 US 86; 113 S Ct 2510; 125 L Ed 2d 74 (1993); *Syntex Laboratories v Dep't of Treasury*, 233 Mich App 286; 590 NW2d 612 (1998). *Moreover, defendant is not estopped from retroactively applying the new rule created by case law simply because it had issued revenue administrative bulletins advising taxpayers of what the then-applicable rule was.*1 Contrary to what plaintiff asserts, defendant did not "bait and switch." Cf. *Newsweek, Inc v Florida Dep't of Revenue*, 522 US 442; 118 S Ct 904; 139 L Ed 2d 888 (1998). *In addition, plaintiff has no vested right to continued application of a particular taxing standard, so it cannot claim that imposition of the SBT constitutes unfair and unjust treatment. Syntex Laboratories, supra* at 293. Finally, defendant was not barred by the doctrine of laches from retroactively applying the SBT because plaintiff cannot show hardship as a result of the delay. See *Speaker-Hines & Thomas, Inc v Dep't of Treasury*, 207 Mich App 84, 91; 523 NW2d 826 (1994), and *Amway Corp v Dep't of Treasury*, 176 Mich

App 285, 294-295; 438 NW2d 904 (1989), vacated in part and remanded on other grounds 433 Mich 908 (1989).

---

[1] Plaintiff also incorrectly argues that defendant was required by MCL 24.203(6) to follow its earlier statements of the law as set out in the revenue administrative bulletins. MCL 24.203(6) is part of the Administrative Procedures Act, which does not apply to revenue administrative bulletins. The revenue division act at MCL 205.3(f) authorizes the bulletins, and nothing in that act makes them binding on defendant in the face of contrary judicial decisions.

---

[Emphasis added.]

More recently, this Court reaffirmed these principles in *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38; 706 NW2d 460 (2005). In *JW Hobbs*, the trial court ruled that the RABs were binding and could only be applied prospectively. This Court determined that the trial court erred, holding:

> RABs are actually issued under MCL 205.3(f), which allows defendant to "issue bulletins that index and explain current department interpretations of current state tax laws." Our Supreme Court has held that RABs are only interpretations of the applicable statutes and do not have the force of law. See, e.g., *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 21; 678 NW2d 619 (2004). In *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441, 448-449; 691 NW2d 57 (2004), this Court stated, "[m]oreover, defendant is not estopped from retroactively applying the new rule created by case law simply because it had issued revenue administrative bulletins advising taxpayers of what the then-applicable rule was. Thus, defendant is not legally bound to adhere to its stated interpretation of tax law in its RABs.
>
> Finally, the argument that new state taxing standards may not be imposed retroactively has been rejected by the

United States Supreme Court in *Harper v Virginia Dep't of Taxation,* 509 US 86; 113 S Ct 2510; 125 L Ed 2d 74 (1993). [*JW Hobbs, supra* at 46-47.]

I also believe that the majority's reliance on *In re D'Amico Estate,* 435 Mich 551; 460 NW2d 198 (1990), is misplaced. In *D'Amico,* the defendant Department of Treasury changed its position, and later had its change endorsed by the courts. *Id.* at 559 n 11. In contrast, defendant in these cases changed its position only after it was forced to do so by the courts. And the general rule is that judicial decisions are to be given complete retroactive effect. *JW Hobbs, supra* at 45. Finally, while the *D'Amico* Court held that the defendant was bound by its prior RAB, at least with regard to the estates of people who purchased lottery tickets before the defendant advised inheritance tax field examiners of a "new development," defendant here is seeking retroactive application to only those tax years that were still open.

Because the precise issues raised in these cases were resolved in *Rayovac, JW Hobbs,* and *Syntex Laboratories v Dep't of Treasury,* 233 Mich App 286, 292-293; 590 NW2d 612 (1998), we are constrained to follow their holdings. MCR 7.215(J)(1). The majority's opinion creates an impermissible conflict with previously published opinions of this Court.