*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOE ELZEIN,

UNPUBLISHED
August 18, 2022

Plaintiff-Appellant,

v

No. 352187
Macomb Circuit Court
LC No. 2018-003087-NF

AMERICAN COUNTRY INSURANCE
COMPANY,

Defendant-Appellee.

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In this first-party action for recovery of personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals as of right the trial court's opinion and order granting, on reconsideration, defendant's motion for summary disposition on the basis of a fraud exclusion in defendant's policy of insurance. Consistent with this Court's decision in *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), we reverse and remand for further proceedings.

## I. BACKGROUND

Plaintiff owns Aref Metro Cab, Inc., and works as a driver for the company, which is the named insured on a no-fault policy issued by defendant for a 2010 Chrysler Town and Country van. On December 19, 2017, plaintiff was driving the van when it was struck from behind by another vehicle. According to plaintiff, the police were called, but did not respond. He then drove to a police station and filed a report.

Plaintiff did not immediately seek medical treatment, but between three and seven days after the accident he sought treatment from a doctor who referred him for imaging of his head, shoulder, back, and knee. The doctor also referred plaintiff for physical therapy and treatment of dizziness. Plaintiff stopped treatment after approximately six months because his condition had improved and his insurer stopped paying for treatment.

-1-

In August 2018, plaintiff filed this action seeking recovery of no-fault PIP benefits, including expenses related to medical treatment, attendant care, wage loss, replacement services, and other expenses. In its answer, defendant denied responsibility for any additional benefits and asserted, among 26 affirmative defenses, that plaintiff was not the named insured under the policy, that plaintiff was not entitled to expenses for replacement services because he either did not incur them or did not provide sufficient proof to document the claim, and that plaintiff's claim was barred by a fraud exclusion in the policy or because he had committed common-law fraud in his pursuit of benefits.

In April 2019, plaintiff appeared for his deposition, answering questions through an Arabic interpreter. The initial questions focused on plaintiff's previous history of accidents and injuries. Plaintiff revealed that he had testified at a deposition in 2012 as the plaintiff in litigation arising from an automobile accident that occurred in 2007 or 2008. Plaintiff did not recall whether he went home or to the hospital following that accident, but he testified that at some point he sought medical treatment and continued treatment for pain in his neck and lower back, but he did not have pain elsewhere and did not have any headaches. He stated that following the 2008 accident, he was disabled from work for almost a year and, after receiving treatment, including physical therapy and an injection for his back, his pain resolved in mid-to-late 2010.

When asked whether he had been involved in any other accidents between 2009 and December 2017, plaintiff testified that he had been involved in an accident in which his car was damaged and he filed a police report, but he was not injured. He did not recall when that accident occurred, but he thought it was in 2015. Plaintiff explicitly denied involvement in any other accidents. Plaintiff also testified that he had not filed any lawsuits other than his divorce and the 2012 lawsuit, and he repeated that he had not been involved in any other accidents, but then revealed that he had broken his thigh at age 14 after having been struck by a car while riding a bicycle, and that he had surgery on his head after being stabbed "by mistake" in 2007.

Plaintiff testified that in the December 2017 accident, he injured his lower back, head, shoulder, and left knee, and he suffered from dizziness and headaches, but he no longer received treatment for his injuries because his insurance payments stopped and his condition improved. However, he still experienced pain in his lower back. The parties agreed to resume plaintiff's deposition at a future date for questions primarily "regarding the medical treatment from the subject accident."

Plaintiff's deposition resumed in June 2019. Again speaking through an interpreter, plaintiff again testified that he began treatment eight or nine days after the December 2017 accident due to pain in his shoulder, back, left knee, and neck, and that he had not sought treatment for these pains before the accident. He stated that his doctor told him that no doctor had ever told him that he had a degenerative condition, and that he had no dizzy spells before the accident.

Plaintiff also testified that he could not perform household chores for six or seven months following the accident and that a friend began assisting him two weeks after the accident because he needed help, but they had no agreement for payment. Plaintiff stated, however, that he told his friend that he would pay him $20 a day and that they had a verbal agreement, but that he had not yet paid his friend anything.

Plaintiff testified that before the December 2017 accident, he had never sought treatment for either shoulder, his neck, or headaches. He also testified that he never sought treatment for anxiety, depression, emotional distress, or fatigue. He did not recall receiving treatment for left shoulder pain in October 2017, and he did not recall complaining about shoulder pain following an accident three months before the December 2017 accident. Similarly, plaintiff did not recall seeking treatment for his neck earlier in 2017, treatment for headaches in 2016, or an MRI of his brain due to dizziness or weakness in 2015. He also stated that he never had treatment for his stomach before 2017, but admitted that he had been shot in the stomach and had surgery in 1984.

In July 2019, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant asserted that plaintiff was not entitled to benefits for household services or attendant care because he did not have an agreement to pay for any such services or care, and he did not present any reliable evidence of any such services or care and did not incur an obligation to pay for such services or care.

Defendant also contended that the no-fault policy "explicitly excludes coverage to insureds that make fraudulent statements in connection with receiving coverage." Alleging multiple instances of untruthful testimony by plaintiff at his 2019 deposition, defendant noted plaintiff's statements that he had never sought treatment for either of his shoulders, his neck, headaches, depression, anxiety, dizziness, emotional distress, fatigue, or vertigo before the 2017 accident, and then pointed to plaintiff's medical records and 2012 deposition testimony as proof that he had testified untruthfully in 2019. Defendant also asserted that plaintiff had testified untruthfully regarding his wage loss, noting a discrepancy between plaintiff's 2019 deposition testimony and his testimony at his 2012 deposition in connection with the 2008 accident.

Plaintiff denied making any material misrepresentations, asserted that he had disclosed prior injuries and accidents and had no intention of concealing prior injuries, and that the fraud exclusion did not apply to him because he was not the named insured on the policy. Plaintiff contended that Michigan law does not require written documentation to support a claim for replacement services, that his own deposition testimony was sufficient proof of such services, that he had an agreement to pay his friend for replacement services, and that his friend expected such payment, and asserted that his own deposition testimony was sufficient proof of such services.

Arguing that the issue of fraud was a question of fact for the jury, plaintiff asserted that defendant had failed to establish that plaintiff knew that any of his statements were false when he made them or that he made any false statements with the intention that defendant would act upon them. Plaintiff emphasized that he had freely disclosed past injuries dating from his youth, and that he had answered questions regarding past injuries to the best of his recollection. Plaintiff also asserted that defendant had not alleged reliance on any misrepresentations and had shown no damages from any misrepresentations, and that the no-fault act does not provide for barring an entire claim due to fraud. Plaintiff also asserted that the fraud exclusion in the policy did not apply to him because the named insured was Aref Cab Company, not plaintiff.

On October 25, 2019, the trial court entered an opinion and order denying defendant's motion for summary disposition. The court held that the portion of the policy attached to the motion did not demonstrate that plaintiff was an insured bound by the fraud exclusion, and denied summary disposition without prejudice. Addressing plaintiff's claim for replacement services, the

court held that plaintiff was not required to prove he was actually billed by the service provider and that, viewing plaintiff's deposition testimony in the light most favorable to plaintiff, there were questions of fact regarding whether plaintiff incurred expenses for replacement services, as well as plaintiff's actual expenses for replacement services and the cost incurred for such replacement services.

Defendant filed a motion for reconsideration, contending that the fraud exclusion applied to plaintiff as the owner, president, and a driver for his company, that the named insured of the subject policy was Aref Metro Cab, that plaintiff owned the vehicle in question, and that on the date of the accident the vehicle was "an insured, covered commercial vehicle." Defendant argued that the trial court was misled in finding that plaintiff somehow was not an insured or otherwise not bound by the policy's terms. Defendant also compared plaintiff's deposition testimony with his medical records, and asserted that "the multitude of misrepresentations that Plaintiff knowingly and calculatingly made throughout the course of this litigation were material and constitute fraud." Defendant requested that the trial court grant the motion for reconsideration and grant summary disposition in its favor.

On December 18, 2019, the court entered an opinion and order granting defendant's motion. Regarding the request for reconsideration, the court found that the motion presented evidence that plaintiff "was the sole owner and officer of Aref Metro Cab and because he was working for his company at the time of the accident, he qualifies as an insured under the policy" and is therefore "subject to the fraud provision."

Addressing the issue of fraud, the trial court quoted *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), to describe the burden borne by an insurer attempting to enforce a fraud exclusion.[1] After reviewing discrepancies between plaintiff's 2018 deposition, his deposition testimony in the earlier litigation, and his medical records, the court held that plaintiff's "failure to disclose his 1998 and 2002 accidents and his significant medical history—all of which include complaints for many of the same injuries he sustained in the December 2017 accident— were misrepresentations," that the misrepresentations were material, and that it was unreasonable to conclude that plaintiff "didn't know his misrepresentations were false or that he didn't make them recklessly." The court also found that plaintiff intended that defendant "would rely on them in determining an appropriate amount of no-fault benefits to provide him." Viewing the evidence in a light most favorable to plaintiff, the court concluded that plaintiff "violated the policy's fraud provision pursuant to *Bahri* when he misrepresented his prior medical history and failed to disclose

---

[1] "To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it." *Bahri*, 308 Mich App at 424-425, quoting *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (citation omitted).

-4-

his 1998 and 2002 accidents." Accordingly, the court held that plaintiff was barred from recovering PIP benefits from defendant.

On appeal, plaintiff argues that the trial court erred by finding that he made a material misrepresentation or false statement with the intent to conceal or misrepresent any material fact or circumstance, that there is an issue of fact regarding his replacement-services claim, and that defendant failed to properly plead fraud as an affirmative defense.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). A reviewing court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* at 206. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists where the record leaves open an issue upon which reasonable minds might differ. *Id.* The trial court may not weigh the evidence or determine credibility when deciding a motion for summary disposition and may not make findings of fact. *Patrick v Turkelson*, 322 Mich App 595, 605-606; 913 NW2d 369 (2018).

The sufficiency of any assertion of an affirmative defense is also reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

## III. ANALYSIS

After the trial court decided this matter, this Court decided *Haydaw*, 332Mich App 719, and held that "statements made during the course of litigation do not implicate an insurance policy's fraud or misrepresentation clause and that such a clause may not be relied on by the insurer to justify a denial of benefits." *Id.* at 730. Because the trial court in this case granted summary disposition premised on misrepresentations made by plaintiff during the course of litigation, we reverse the trial court's decision granting summary disposition for defendant.

The facts of *Haydaw* bear a strong similarity to the facts of this case. In *Haydaw*, the plaintiff filed a lawsuit alleging that he suffered injuries to his back, neck, and shoulders in an automobile accident and that his insurer had wrongfully withheld PIP benefits. During discovery, the plaintiff signed authorizations for the release of his medical records and also testified at deposition, through an interpreter. The plaintiff testified that he had never injured himself before the accident and that he had only seen his primary care physician for the flu, and that he had only been prescribed medications for conditions such as the flu. Following completion of discovery, the insurer filed a motion for summary disposition under the policy's fraud provision, asserting that the plaintiff's medical records contradicted this testimony, revealing a history of back, neck, and shoulder pain, as well as prescription pain medication in the years preceding the accident, and that the plaintiff had testified falsely that he did not have back, neck, or shoulder problems before the accident. *Id.* at 721-722.

Responding to the motion, the plaintiff contended that he had testified truthfully according to his understanding of the questions, that he had voluntarily released his medical records, and that any inaccuracy in his testimony went to his credibility and was for the trier of fact to determine. After a hearing, the trial court found that the "plaintiff made false statements at his deposition and granted summary disposition on the basis of the policy's fraud provision." *Id.* at 723.

On appeal, this Court stated the issue as "whether statements made during litigation after the insured's claim is denied constitute grounds to void the policy under a fraud provision." *Id.* After conducting an extensive review of federal and state law on this issue, this Court adopted what it described as the majority view:

> False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false is a matter for a jury or a judge acting as factfinder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper. [*Id.* at 726-727.]

This Court likened false statements made during the course of litigation to "discovery misconduct," *id.* at 727, noted that "questions of credibility and intent are generally left to the trier of fact," *id.*, and explained that "it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony." *Id.* This Court observed that statements made during litigation cannot satisfy the elements of fraud stated in *Bahri* because statements made during discovery are not made with the intention that the insurer will act upon them. *Id.* Finally, this Court explained that applying a fraud exclusion to statements made during litigation "would implicate the first-breach rule. That is, if an insurer, by the denial of the claim, was the first to breach the contract, it may not defend on the grounds that the plaintiff subsequently failed to adhere to the contract." *Id.* at 729. Concluding that "we are convinced that statements made during the course of litigation do not implicate an insurance policy's fraud or misrepresentation clause and that such a clause may not be relied on by the insurer to justify a denial of benefits," this Court reversed the trial court's grant of summary disposition to the defendant. *Id.*

A published opinion of this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2), which "generally requires courts to reach the same result when presented with the same or substantially similar issues in another case with different parties." *W A Foote Mem Hosp v City of Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004). See also MCR 7.215(J)(1) (a panel of this Court must follow the rule of law established by a prior published decision of this Court issued after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of this Court).

As noted, this case is factually similar to *Haydaw*. In this case, as in *Haydaw*, defendant premised its motion for summary disposition on statements made by plaintiff at his deposition. Likewise, the trial court premised its decision granting summary disposition on those same statements, made during the course of litigation. Thus, consistent with *Haydaw*, we reverse the trial court's decision granting summary disposition for defendant.

-6-

Given this resolution, we need not address plaintiff's remaining issues. Nevertheless, we note that plaintiff's request for replacement-services benefits was not denied by the trial court, which originally found that "reasonable minds could differ on the issue of the amount of costs (if any) incurred for his replacement services, thus precluding summary disposition." The trial court's subsequent order granting reconsideration did not disturb this finding, and defendant has not challenged that decision in a cross-appeal. An issue is not properly before this Court if the party raising the issue is not aggrieved by the court's decision on that issue. MCR 7.204(A); *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 52; 706 NW2d 460 (2005). "A party is not "aggrieved" if the order appealed from is in its favor." *Dep't of Consumer & Indus Servs v Shah*, 236 Mich App 381, 385; 600 NW2d 406 (1999).

We also note that resolution of plaintiff's final issue, whether defendant sufficiently asserted fraud as an affirmative defense, is obviated in light of our holding that plaintiff's statements made during the course of litigation cannot support application of the fraud exclusion in this case.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff may tax costs.


/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel